UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

C.B., a minor, by and through her
father BROOK BAVILACQUA, and
her mother MELISSA BAVILACQUA,

            Plaintiff,

    v.

BOARD OF EDUCATION OF
MINOOKA COMMUNITY HIGH
SCHOOL DISTRICT 111, RENEE
EBEL, Dean of Students; and
PATRICK WATSON, Dean of
Students,

            Defendants.

No. 23-cv-2367
Judge Franklin U. Valderrama

## ORDER

"Students do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."[1] But school officials may curtail a student's speech if it materially disrupts classwork or involves substantial disorder or invasion of the rights of others. 393 U.S. at 513. (cleaned up).[2]

C.B., a high school student, was suspended from school by Defendants Board of Education of Minooka Community High School District No. 111 (the Board), Renee Ebel (Dean Ebel), and Patrick Watson (Dean Watson) (collectively, Defendants), after

---

[1] *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 506 (1969) (cleaned up).

[2] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

she sent a message via Snapchat to another student outside of school, that Defendants concluded was racially offensive and anti-immigrant in tone.

C.B., by and through her parents (Plaintiff), sued, alleging that Defendants' disciplinary actions violated her First Amendment Right to Freedom of Speech (Count I) and her Right to Association (Count II), in violation of 42 U.S.C. § 1983. *See generally* R. 27, First Amended Complaint (FAC).[3] Plaintiff also asserts claims for injunctive and other relief (Count III), as well as indemnification under 105 ILCS 5/10-20.20 (Count IV).

Defendants filed a Motion to Dismiss (the Motion) Plaintiff's FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 29, Mot. Dismiss. This fully briefed Motion, *see* R. 33, Resp.; R. 34, Reply, is before the Court, and for the reasons that follow, the Motion is granted as to Counts I and III and denied as to Counts II and IV.

## Background[4]

At all relevant times, Plaintiff was a student at Minooka Community High School (MCHS), a public school in Minooka, Illinois. FAC ¶¶ 2, 9. While attending MCHS, Plaintiff was friends with her schoolmate G.G. *Id.* ¶ 17.

Plaintiff and G.G. socialized with each other through Snapchat, a social media app and messaging service, which allows users to communicate with each other by

---

[3]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

[4]The Court accepts as true all the well-pled facts in the Complaint and draws all reasonable inferences in Plaintiff's favor. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

Case: 1:23-cv-02367 Document #: 98 Filed: 07/07/25 Page 3 of 22 PageID #:826

sharing photos and messages. FAC ¶ 18. Such communications can be disseminated broadly to many Snapchat users, or intimately to a single user. *Id*.

Snapchat also permits a user to "block" another user. FAC ¶ 19. When a user blocks another user, the two users can no longer socialize on Snapchat. *Id*. That is, both users are removed from each other's list of contacts, they are prevented from seeing each other's new messages, and the message history between the two users is no longer available to either user. *Id*.

On Thursday, April 15, 2021, G.G. used Snapchat to send a message to D.E., another MCHS student, that comprised three Internet images depicting the American flag, U.S. service members, and what appears to be the grieving family of a fallen solider. FAC ¶¶ 20–23; *see also* FAC, Ex. 1.

In response to this message, D.E. replied to G.G. stating:

> fuck u n ya cops
> i will never stand for the plego
> pledge
> never have never will

FAC ¶ 25, [sic].

G.G. then took and posted a screenshot of D.E.'s reply on Snapchat, along with G.G.'s own comment responding to D.E.'s reply: "People like this make me sick." FAC ¶ 27. G.G. did not stop at this one post. Thereafter, he "tagged" Plaintiff, which meant that Snapchat would notify Plaintiff that G.G. wanted her to see what he had posted. *Id*. ¶ 28.

That same day, April 15, at approximately 8:00 PM, Plaintiff *did* see G.G.'s screenshot, and in response, Plaintiff sent G.G. the following direct message on Snapchat regarding D.E.'s comment:

> cant even spell in english. leave.
> go back to wherever u came from.

FAC ¶¶ 30–31, [sic]. Plaintiff then sent G.G. a follow-up direct message, asking him not to share her prior "leave" message with anyone. *Id*. ¶ 33.

However, the next day, Friday, April 16, Deans Ebel and Watson learned about Plaintiff's "leave" message from D.E., and they directed G.G. to block Plaintiff on Snapchat, a directive with which he complied. FAC ¶ 34.

The following week, on Monday, April 19, Deans Ebel and Watson took disciplinary measures against Plaintiff, in accordance with Board policy, including a ten-day out-of-school suspension, social suspension through the remainder of the school year prohibiting Plaintiff's attendance at school-sponsored events, and 80 demerits for her conduct. FAC ¶ 38–40, 47.

The Board was informed of the discipline imposed on Plaintiff, and either approved it, or otherwise allowed it to remain in effect. FAC ¶ 41.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Federal Rule of Civil Procedure 8, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint

need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp.*, 550 U.S. 544 The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Defendants raise several arguments in support of their Motion. *See generally* Mot. Dismiss. The Court addresses each argument in turn, beginning with Defendants' motion to dismiss Count I of the FAC.

## I.     Deprivation of Freedom of Speech (Count I)

Section 1983 creates a cause of private right of action against any person who, under color of state law, "subjects, or causes to be subjected" any person within the United States "to deprivation of any rights, privileges, or immunities" secured by federal law. 42 U.S.C. § 1983.

Plaintiff alleges that Defendants, in violation of Section 1983, deprived her of her First Amendment Right to Freedom of Speech. FAC ¶¶ 43–52. Plaintiff maintains that, by disciplining her for her private Snapchat message, Deans Ebel and Watson were following Board policy, or alternatively acting as final decision makers pursuant to the power granted to them by Illinois law and by the Board. *Id.* ¶¶ 46–48. Such

"deprivation of her rights," according to Plaintiff, contravenes the First Amendment, which prohibits public schools like MCHS from "abridging the freedom of speech." *Id.* ¶¶ 43–52.

Defendants move to dismiss Count I, maintaining that Plaintiff's Freedom of Speech claim is not viable. Mot. Dismiss ¶ 12. In support of their position, Defendants argue that (1) Plaintiff's allegations are "entirely conclusory," as she failed to attach the Board's policy or cite to any language in the policy that is allegedly unconstitutional; (2) the substance of the speech for which Plaintiff was disciplined is not protected by the First Amendment; and (3) black letter law provides that discipline may be imposed for conduct that occurs off-campus, where warranted. *Id.* ¶ 14. That is, where the message was sent from is less important than the impact it could have on the school environment. *Id.* ¶ 19. In Defendants' view, "[d]igital speech that targets other students has a close nexus to the school, and its regulation is permissible." *Id.* ¶ 22.

Defendants invite the Court to take judicial notice of contemporaneous world events, beginning in May of 2020 throughout 2021, arguing that, against the backdrop of the civil unrest and international protests in response to the murder of George Floyd, the xenophobic "build the wall" chant, which began during the 2015–2016 presential election season and continued through the 2020 presidential election season, and January 6th insurrection at the U.S. Capitol, "it was reasonable to anticipate that Plaintiff's xenophobic message could have caused substantial disruption at school." Mot. Dismiss ¶ 18.

Next, Defendants address what they describe as Plaintiff's "alternative" to her claim concerning the constitutionality of the Board's policy: whether Deans Ebel and Watson are policymakers in the *Monell* context. Mot. Dismiss ¶ 24. Defendants insist they are not, as under state and local law, the Board of Education has the final decision-making authority to impose discipline on students. *Id.* ¶¶ 25–27 (citing *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004)). From Defendants' perspective, "[m]ere authority to implement pre-existing rules is not authority to set policy." *Id.* ¶ 26 (citing *Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1059–60 (7th Cir. 1998)).

In response, Plaintiff argues that (1) under prevailing law, she need not attach the Board's policy, as allegations of an unwritten policy suffice to establish *Monell* liability; (2) First Amendment precedent does not permit Defendants to discipline Plaintiff as this case "does not involve a proactive ban." Rather, "[i]t involves punishment administered after the fact, where no disruption ever occurred." Resp. at 6–7.

As for Defendants' request for judicial notice, Plaintiff objects. Resp. at 8. Plaintiff argues that courts are not permitted to take judicial notice of facts, unless those facts are relevant. *Id.* (citing *Flores v. Board of Trustees of Community College District No. 508*, 103 Supp.3d 943, 948 (N.D. Ill. May 6. 2015)). In Plaintiff's view, the issue in this case is whether Plaintiff's "leave" message caused substantial disruption at school, and the Defendants do not explain how the news events they proffered

"would have made it likely that Plaintiff's conduct at her home would have caused disruption at school." *Id.*

Lastly, with respect to Defendants' policymaker contentions, in pertinent part, Plaintiff argues that the prevailing law granted Deans Ebel and Watson the authority to suspend students, authority which they exercised by suspending Plaintiff to the maximum period imposed by law. Resp. at 11–12 (citing 105 ILCS 5/10-22.6(b)).

In Count I, Plaintiff seeks redress for Defendants' alleged constitutional violations by asserting a *Monell* claim. *See generally* Compl.; *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). To sufficiently state a claim for liability under *Monell*, Plaintiff must allege that her constitutional injury was caused by (1) an express policy; (2) a widespread practice that is so permanent and well settled, although not authorized by written law or express policy, as to constitute a custom or usage with the force of law; or (3) a person with final policy-making authority. *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Plaintiff must also allege that the policy or custom that inflicted the injury was the "moving force of the constitutional violation." *Richter v. Wexford Health Sources, Inc.*, 2017 WL 2813658, at *5 (N.D. Ill. June 29, 2017); *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012).

When evaluating the sufficiency of a *Monell* claim, the Court must first determine whether Plaintiff has alleged a constitutional violation. *Fulton v. Bartik*, 547 F. Supp. 3d 799, 819 (N.D. Ill. 2021) (citing *City of Los Angeles* v. *Heller*, 475 U.S. 796, 799 (1986)) ("*Monell* liability cannot survive without an underlying constitutional violation by an individual defendant."). Because the existence of such

a violation is a prerequisite to *Monell* liability, the Court need not reach Plaintiff's arguments regarding the existence of a policy, practice, or final policymaker unless and until a constitutional deprivation is adequately alleged.

Upon consideration of the parties' arguments and prevailing law, the Court finds that Plaintiff has not plausibly alleged a constitutional injury arising from the discipline imposed by Deans Ebel and Watson in response to her "leave" message.

This Court's analysis begins, as it must, with the "unmistakable," canonical First Amendment jurisprudence governing public schools for over a century: "It can hardly be argued that students . . . shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 506 (1969) (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Bartels v. Iowa*, 262 U.S. 404 (1923)). It is also well established that First Amendment rights of students in public schools "are not automatically coextensive with the rights of adults in other settings." *Bethel School District No. 403 v. Fraser,* 478 U.S. 675, 682 (1986).

Indeed, "[a] school need not tolerate student speech that is inconsistent with its basic educational mission." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988). "[S]chools have a special interest in regulating speech that materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180, 188 (2021). "[T]hese special characteristics," as the Supreme Court has explained, "call for special leeway when schools regulate speech that occurs under its supervision." *Id*.

Such principles extend, in certain cases, to off-campus student speech. *Id.* "[T]he special characteristics that give schools additional license to regulate student speech [do not] always disappear when a school regulates speech that takes place off campus." *Mahanoy Area Sch. Dist.*, 594 U.S. at 188. Put differently, "[t]he school's regulatory interests remain significant in some off-campus circumstances," including "serious or severe bullying or harassment targeting particular individuals; threats aimed at teachers or other students; the failure to follow rules concerning lessons, the writing of papers, the use of computers, or participation in other online school activities; and breaches of school security devices, including material maintained within school computers." *Id.*

At bottom, schools are permitted to and justified in regulating student speech, on or off-campus speech, where the speech in question *threatens* a concrete and "substantial disruption." *Mahanoy Area Sch. Dist.*, 594 U.S. at 192; *see also Hazelwood School Dist.*, 484 U.S. at 266 (recognizing students can be punished for speech if "school authorities have reason to believe that [their speech] will substantially interfere with the work of the school or impinge upon the rights of other students"); *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*, 523 F.3d 668, 673 (7th Cir. 2008) (explaining "[i]t is enough for the school to present facts which might reasonably lead school officials to forecast substantial disruption").

Applying these standards, the Court finds that Defendants' disciplinary measures in response to Plaintiff's "leave" message did not cross the constitutional Rubicon.

Here, in Plaintiff's view, her "leave" message, which was sent from her cellphone, off school grounds, and outside school hours, is protected off-campus speech. *See generally* Resp. However, such a characterization is superficial and gives way when viewed through the lens of the message's content and the reaction it provoked.

Specially, Plaintiff's message was explicitly targeted at another student, D.E., and conceivably conveyed animus based on perceived national origin: "leave. go back to wherever u came from." By Defendants' account,[5] this message was racially offensive and anti-immigrant in tone. Mot. Dismiss ¶ 15. Moreover, Plaintiff's speech involved a direct command ("leave") and used second-person pronouns, affirming that the message was not abstract or political in nature. Rather, it was a personal directive

---

[5]Defendants' account is supported by several events outlined in their petition for judicial notice. Over Plaintiff's objection, the Court grant's Defendants' petition. Under Federal Rule of Evidence 201(b), a court may take judicial notice of an adjudicative fact only if it is "not subject to reasonable dispute" and falls into one of two categories: (1) it is generally known within the trial court's territorial jurisdiction, or (2) it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Depuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 403 F. Supp. 3d 690 (2019). Applying this standard, the Court finds that beginning in May 2020 and continuing throughout, the United States experienced a period of profound civil unrest and international protest were staged in response to the murder of George Floyd. These events unfolded against a broader sociopolitical backdrop that included the resurgence of the "build the wall" chant, originating during the 2015–2016 presidential election season and persisting through the 2020 election cycle, and culminated in the January 6th, 2021 insurrection at the U.S. Capitol. The Court finds these events relevant, as they are emblematic of heightened national tensions and sociopolitical polarization, and provide critical context for the claims at issue. The aforementioned events are indisputable and are both known within the jurisdiction of the Northern District of Illinois and can be accurately and readily determined by accurate sources. *Ocampo v. Remedial Envtl. Manpower, Inc.,* 2014 WL 2893190, at *2 (N.D. Ill. June 26, 2014) ("When presented with a motion to dismiss, the Court may 'take judicial notice of matters of public record.'") (quoting *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994)). Accordingly, the Court takes notice of the aforementioned events as relevant adjudicative facts.

aimed at alienating another student based on identity, which distinguishes this case from the kind of protected general vulgarity in *Mahanoy*, placing it squarely within the category of off-campus speech that a school may legitimately regulate to prevent discriminatory harm.

Furthermore, Defendants did not learn of the message through generalized social media monitoring; rather, the intended target of the speech, D.E., reported it directly to school administrators, underscoring its impact. That act of reporting is not a neutral fact; it underscores the gravity of the situation and highlights the message's impact: harm or disruption, which in turn implicates Defendants' duty to act.

Importantly, under applicable law, actual disruption need not be shown for disciplinary action to be justified; the potential or reasonable forecast of disruption is sufficient. *See Nuxoll ex rel. Nuxoll* 523 F.3d at 673 ("the threat of disruption" satisfies the standard). In this case, the message's delivery to and direct impact on D.E., prompting a formal report, demonstrates a concrete basis for anticipating disruption, thereby meeting the threshold required for the school's responsive measures. *See, e.g., Mahanoy Area School District*, 594 U.S. at 188 (acknowledging schools may regulate off-campus speech that is discriminatory or harassing, particularly where the speech is directed at individual students and has repercussions for campus climate).

All in all, given the direct, targeted, and inflammatory nature of Plaintiff's message; and the actual and threat of disruption it caused as evidenced by the victim's report, the disciplinary measures imposed on Plaintiff did not transgress the limits of the First Amendment. They instead reflect a constitutionally permissible

exercise of school discretion in response to off-campus conduct that reasonably threatened substantial disruption and encroached upon the rights of another student. Accordingly, the Court grants Defendants' motion to dismiss Count I.

Plaintiff requests that the Court allow her to amend her pleading as to any dismissed claims. Resp. at 15. However, "Rule 15(a) says that a party may amend its complaint once as a matter of course. After that, leave to amend depends on persuading the judge that an amendment would solve outstanding problems without causing undue prejudice to the adversaries." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013); *see also Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."). Here, Plaintiff has not provided any indication to the Court how she might amend her complaint for a third time to cure the problems with her First Amendment claim, and the Court cannot discern any possible amendment that would do so. Accordingly, the dismissal of Count I is with prejudice.

## II.     Deprivation of the Right to Freedom of Association (Count II)

In Count II, Plaintiff asserts that, in violation of Section 1983, Defendants deprived her of her First Amendment Right to Freedom of Association. FAC ¶¶ 53–61. Specifically, Plaintiff alleges that Deans Ebel and Watson interfered with her right to Freedom of Association by instructing G.G. to block her on Snapchat, a

directive with which G.G. complied. *Id.* ¶ 59. This was done, again, posits Plaintiff, on account of Deans Ebel and Watson following Board policy, or alternatively acting as final decision makers pursuant to the power granted to them by Illinois law and the Board. *Id.* ¶¶ 57–58.

Defendants generally contend that Plaintiff's Freedom of Association claim is not viable. Mot. Dismiss ¶ 28. According to Defendants, Count II fails as a matter of law because Plaintiff has not alleged "a policy, practice or custom, or claimed that a final policy maker deprived her of her rights," or that she had been denied her right to freedom of expressive association on a protected area of expression. *Id.*

Defendants' position, however, is both perplexing and terminally unsupported. To start, Plaintiff clearly alleges that the impetus of her constitutional violation was Deans Ebel and Watson following Board policy, or alternatively acting as final decision makers pursuant to the power granted to them by Illinois law and the Board. FAC ¶¶ 57–58. In essence, Plaintiff contends that the constitutional violation stems from a deliberate directive issued under color of law by school officials, either pursuant to official policy or as final decision makers under state law.

In light of these allegations, Defendants' sweeping claim that "Plaintiff has not alleged a policy, practice or custom, or claimed that a final policy maker deprived her of her rights," does not square with a plain reading of the FAC. True, Defendants are free to challenge the sufficiency of these allegations. What they may not do is pretend as though such allegations are nonexistent. *See generally Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.

Additionally, Defendants fail to provide the Court with a legal framework against which their assertions regarding Plaintiff's Freedom of Association claim can be meaningfully assessed. Mot. Dismiss ¶ 28. Instead of grounding their position in precedent or articulating a coherent doctrinal analysis, Defendants merely assert that "Plaintiff has not alleged that she was denied her right to freedom of expressive association on a protected area of expression," without explaining the legal significance of this statement in a substantive way. *Id.*

Defendants characterize Plaintiff's message as derogatory and xenophobic, without mentioning, much less engaging, the basis of her Freedom of Association claim: the Deans directing a fellow student to block her on Snapchat. Mot. Dismiss ¶ 28. Nor do Defendants argue that the blocking directive was part of the punishment regime in response to Plaintiff's "leave" message. *See generally* Mot. Dismiss.

At bottom, Defendants' sparse interaction with Plaintiff's Freedom of Association claim falls short. While the Court notes that certain political, religious, or intimate associations have traditionally received First Amendment protection, it cannot be expected to assume the role of advocate and construct arguments that Defendants have chosen not to make.

As the Supreme Court has explained, "[i]n our adversarial system of adjudication, we follow the principle of party presentation, [which is] designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "The Court will

not make arguments for the parties, nor should the parties expect that the Court will consider arguments that the parties could have made, but did not." *Fair Hous. Ctr. of C. Indiana, Inc. v. Rainbow Realty Group, Inc.*, 2022 WL 6158365, at *1 (S.D. Ind. Oct. 7, 2022).

Vague contentions without supporting legal authority need not be considered. *Shipley v. Chicago Bd. of Election Commissioners,* 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 n.2 (7th Cir. 2019) ("As briefed, the argument is terse, free of legal citation, and vague. It is therefore waived."); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (explaining perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived). "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." *United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990). Accordingly, Defendants' motion to dismiss Count II is denied.

## III. Injunctive and Other Relief (Count III)

In Count III, Plaintiff requests injunctive and other relief. FAC ¶¶ 62–63. Specifically, Plaintiff seeks a judgment (1) ordering the Board to remove the suspension and 80 demerits from her record; (2) "declaring" that, if any colleges or universities have been informed by Defendants of Plaintiff's suspension or any related matter, the Defendants shall issue a written retraction to those institutions, stating that the suspension resulted from the Defendants' own error and should be

16

disregarded; (3) enjoining further or continuing discipline against Plaintiff related to the facts alleged in the FAC; and (4) awarding costs and reasonable attorney's fees. *Id*. ¶ 63.

As to this Count, Defendants challenge only Item (2), Plaintiff's request for relief vis-à-vis colleges and universities, which, from Defendants' perspective, is premature. Mot. Dismiss ¶ 34. Defendants contend that Plaintiff has only alleged a hypothetical controversy ("if any colleges or universities have been notified by Defendants regarding Plaintiff's suspension . . . Defendants must send those colleges and universities a retraction . . ."), and such a controversy does not square with the Declaratory Judgment Act, which permits courts to issue declaratory judgments where "there is an actual controversy between two parties." *Id*. (quoting *NewPage Wis. Sys. Inc. v. United Steel, et al.*, 651 F.3d 775, 776 (7th Cir. 2011); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("[T]he availability of [declaratory] relief presupposes the existence of a judicially remediable right.")).

Plaintiff, however, takes Defendants' view of the prevailing law to task, arguing that "[a] dispute is not hypothetical when it is based on facts that are likely to occur." Resp. at 15 (citing *Rimini Street, Inc., v. AXIS Insurance Company*, 644 F.Supp.3d 467, 473 (N.D. Ill. 2022)). Thus, as Plaintiff sees it, "the relevant question . . . is whether it is likely that Defendants might need to notify colleges that Plaintiff was suspended in error." *Id*. The answer to this question, Plaintiff maintains, is yes. *Id*.

Both Plaintiff and Defendants misfire. True, declaratory judgment requires "an actual case or controversy," *see Geisha, LLC v. Tuccillo*, 525 F. Supp. 2d 1002, 1009–10 (N.D. Ill. 2007), and generally, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). It also true, however, that when determining whether an actual case or controversy exist in certain contexts, courts in this Circuit have asked whether the "events . . . are likely to occur." *Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, 2018 WL 2431969, at *6 (N.D. Ill. May 30, 2018) (citing *Cushman & Wakefield, Inc. v. Ill. Nat'l Ins. Co.*, 2015 WL 2259647, at *4 (N.D. Ill. May 11, 2015)).

Item 2, however, does not seek declaratory relief, despite Plaintiff's use of the word "declaring" in the FAC. FAC ¶ 63. "The purpose of declaratory relief is to allow the adjudication of rights and obligations in cases involving an actual controversy but have not yet reached the stage in which a party could sue for coercive relief, such as damages." *Wisconsin State Sen. v. City of Green Bay*, 719 F. Supp. 3d 869, 877 (E.D. Wis. 2024). In other words, declaratory relief involves a court stating the legal rights or status of the parties *without* ordering them to do anything. *Id.*

Labeling and form aside, the essence of Item 2 is action, not clarification. *Avery v. City of Milwaukee*, 847 F.3d 433, 438 (7th Cir. 2017) (focusing on substance and purpose over labels and form). Thus, Plaintiff's request that Court the order Defendants to send colleges retractions should the Court determine that the

disciplinary measures taken in response to her "leave" message contravene the First Amendment is a cry for *injunctive relief*. FAC ¶ 63; *see also U.S. v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952) (recognizing injunctive relief is a form of equitable remedy issued by courts to prevent or mandate certain actions to address ongoing or future harm); *City of Chicago v. Barr*, 961 F.3d 882, 910 (7th Cir. 2020) ("Injunctive relief is forward-looking, and a plaintiff injured by an unconstitutional or unlawful action in one year does not need to suffer injuries repeatedly in each ensuing year—and separately sue after each injury—to obtain relief from the unlawful actions.").

Even still, given the Court's finding as to and dismissal of Count I, Plaintiff's request for retractions cannot stand. Without a viable underlying claim, the injunctive relief sought in Item 2 lacks independent legal grounding and is therefore not cognizable. *U.S. ex rel. Walner v. NorthShore U. Healthsystem*, 660 F. Supp. 2d 891, 899 (N.D. Ill. 2009) (explaining that in order to adequately state a claim for injunctive relief plaintiff must establish a reasonable likelihood of prevailing on the underlying legal claim). Thus, the Court grants Defendants' motion to dismiss Plaintiff's request under Item 2. For the same reasons discussed above, *see supra* Section I, the dismissal is with prejudice.

## IV.    Indemnification (Count IV)

In Count IV, Plaintiff brings an indemnification claim against the Board pursuant to 105 ILCS 5/10-20.20. FAC ¶¶ 64–67. Defendants move to dismiss Count IV, arguing that Plaintiff does not have standing under the plain language of 105 ILCS 5/10-20.20, which provides in relevant part:

> Such indemnification and protection shall extend to persons who were members of school boards, employees of school boards, authorized volunteer personnel, mentors of certified staff, or student teachers at the time of the incident from which a claim arises.

Mot. Dismiss ¶ 35 (quoting 105 ILCS 5/10-20.20).

In response, Plaintiff clarifies that her indemnification claim "simply provides notice that, if the Defendant Deans are found liable, Plaintiff will be requiring the School Board to pay whatever damages are awarded against them." Resp. at 14. Plaintiff also notes that indemnification is also authorized by 745 ILCS 10/9-102. *Id*. The Court agrees with Plaintiff.

It is well established that a Section 1983 plaintiff may bring an indemnification claim prior to judgment against a government actor and is permitted to give notice of the same under applicable indemnification statutes. *See, e.g.*, *Wilson v. City of Chicago*, 120 F.3d 681 (7th Cir. 1997) (holding that plaintiff was not required to wait until final judgment was entered on his civil rights claim against police officer before seeking to hold city derivatively liable for such judgment); *Schneider v. Cnty. of Will, Ill.*, 528 Fed. App'x. 590, 591 (7th Cir. 2013) (Will County named as a defendant for an indemnity claim regarding the sheriff and warden; no independent constitutional violations were alleged against Will County); *Perkins v. O'Shaughnessy*, 2011 WL 579333, at *4 (N.D. Ill. Feb. 9, 2011) ("Permitting Plaintiffs to bring a conditional indemnification claim now may be more efficient than requiring them to wait until final judgment and will not prejudice the Defendant Officers or the City."); *Cates v. Manning*, 2020 WL 1863299, at *2 (N.D. Ill. 2020) (emphasis added) (Section 1983 "plaintiffs routinely assert section 9-102 indemnification claims against

20

municipalities simultaneously with the underlying claims *against the individual officers* who may have harmed them."); *Coles v. City of Chicago*, 361 F. Supp.2d 740,746 (N.D. Ill. 2005) (emphasis added) ("[I]t is common, and indeed advisable, for a plaintiff who expects a public entity to indemnify a Section 1983 judgment to add that entity as a defendant on the indemnity claim *during the pendency* of the Section 1983 case."). Accordingly, Defendants' motion to dismiss Count IV is denied.

## Conclusion

For the reasons stated above, Defendants' Motion [29] is granted with prejudice as to Counts I and Item 2 of Count III, and is denied as to Counts II and IV. On or before July 21, 2025, the parties are directed to file a status report indicating whether, in light of the Court's ruling, the parties are mutually interested in a settlement conference before Magistrate Judge Kim. If not, the status report should indicate whether any party intends to move for summary judgment, and if so, if more than one parties intend to move for summary judgment, they should provide a proposed briefing schedule that comprises of four briefs instead of six (e.g., (1) Party A's opening motion, (2) Party B's cross-motion and response to Party A's motion, (3) Party A's reply and response to Party B's cross-motion, (4) Party B's reply to cross-motion). The Court understands that the parties did not engage in expert discovery [90], so there should not be any *Daubert* motions; however, if that is incorrect, the parties should inform the Court in the status report. If no parties intend to move for summary judgment, the status report should indicate: (1) whether the parties consent to proceeding with trial before the Magistrate Judge, (2) whether the parties consent

to a bench trial, (3) the anticipated number of days for trial (including *voir dire*), and

(4) the expected number of witnesses.

Date:  July 7, 2025

United States District Judge
Franklin U. Valderrama