**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| C.B., a minor, by and through her father BROOK BAVILACQUA, and her mother MELISSA BAVILACQUA,<br><br>       Plaintiff,<br>    v.<br><br>BOARD OF EDUCATION OF MINOOKA COMMUNITY HIGH SCHOOL DISTRICT 111, RENEE EBEL, Dean of Students; and PATRICK WATSON, Dean of Students,<br><br>       Defendants. | No. 23-cv-2367<br>Judge Franklin U. Valderrama |

**ORDER**

Plaintiff is a public high school student who alleges she was unconstitutionally disciplined by her high school for sending a private Snapchat message while off-campus to fellow-student (G.G.), which stated in reference to another student (D.E.), "cant even spell in english. leave. go back to wherever u came from." First Amended Complaint (FAC) ¶ 31. The Court granted Defendants' motion to dismiss Plaintiff's First Amendment Freedom of Speech claim, finding that schools are permitted to regulate off-campus student speech where the speech in question threatens a concrete and substantial disruption, because, as alleged, those circumstances were present here. *See generally* R. 98, Order. Plaintiff now moves the Court to reconsider that decision, arguing that the Court did not fully appreciate that the message was not sent directly to the student to which it referred, that it was only sent because the other student had disparaged veterans, and that the Court assumed certain facts not alleged in the FAC. R. 103, Mot. Recons. For the reasons stated below, Plaintiff's motion for reconsideration is granted.

**LEGAL STANDARD**

"Motions to reconsider interlocutory orders are governed by Federal Rule of Civil Procedure 54(b), which provides that any order that does not resolve all claims as to all parties may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Saccameno v. Ocwen Loan Servicing, LLC*, 2018 WL 1240347, at *2 (N.D. Ill. Mar. 9, 2018) (cleaned up). "Motions for reconsideration serve the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence." *In re NorthShore Univ. Healthsystem Antitrust Litig.*, 2016 WL 11430715, at *1 (N.D. Ill. Sept. 19, 2016) (citing *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). A manifest error of law occurs "when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239,

253 (7th Cir. 2015) (cleaned up). A party may also use a motion for reconsideration to alert the court to "a significant change in the law or facts, the court's misunderstanding of a party's argument, or a party's contention that the court ruled on an issue that was not properly before it." *Janusz v. City of Chicago*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015), *aff'd*, 832 F.3d 770 (7th Cir. 2016) (citing *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008)).

Motions for reconsideration are "disfavored." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). Accordingly, a motion for reconsideration is not a vehicle to rehash arguments that were previously presented to the court, "and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the [ruling]." *In re NorthShore Univ. Healthsystem Antitrust Litig.*, 2016 WL 11430715, at *1 (cleaned up). Whether to grant or deny a motion to reconsider is within the court's discretion. *See Patrick*, 103 F. Supp. 3d at 911.

### ANALYSIS

In her motion, Plaintiff argues that the Court committed a manifest error of law, by misapprehending that: (1) Plaintiff sent the statement at issue directly to D.E.—the person whom it was about—rather than to G.G., another third-party to this case; and (2) the statement was made with the intention of targeting D.E. for D.E.'s nationality, as opposed to targeting D.E. for expressing "contempt for disabled veterans, deceased veterans, and the United States flag." Mot. Recon. at 2. Defendants counter that the Court did not misapprehend these facts, but in fact considered them, and regardless, these facts do not change the conclusion. Resp. at 1. For the reasons stated below, the Court agrees with Defendants that its Order did not misapprehend these facts, however, the Court agrees with Plaintiff that the ultimate conclusion should be reconsidered.

First, as Defendants point out, the Court was clear in its Order that it understood that Plaintiff alleged that she sent the message at issue privately to G.G., not to D.E. *See* Order at 4 ("Plaintiff sent G.G. the following direct message . . .").[1] Further, when the Court noted that Plaintiff's speech involved a "second-person" "direct command," it was because the message was, in fact, a command in the second-person—"leave," "go back to wherever u came from"—in which Plaintiff alleged she was referring to D.E. Order at 11–12; FAC ¶ 30 ("Plaintiff's private message expressed her personal thoughts and feelings on seeing D.E.'s comment"). Finally, the "delivery to and direct impact on D.E." referenced the Plaintiff's allegations that D.E. in fact learned of the message and reported it to the school. Order at 12; FAC ¶ 34 ("Defendant Deans Ebel and Watson had become aware of Plaintiff's private message to G.G. after D.E. complained about it.").

The Court found that taking the Plaintiff's allegations as true, the message risked causing— if not actually caused—substantial disruption at the school. Order at 12. To the extent that Plaintiff

---

[1]Plaintiff takes issue with the fact that the Court used the term "direct message" rather than "private message," which Plaintiff says suggests that the message was not sent privately to G.G. Mot. Recons. at 5. Defendants respond that "direct" and "private" mean one and the same in the world of social media. Resp. at 7. Indeed, Merriam-Webster defines "direct message," or "DM" for short, as "a private message sent on social media to a specific individual or group." DM: MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/DM. It was in this sense that the Court described the message from Plaintiff to G.G.

argues that the Court assumed facts not in the FAC, the Court agrees. The Court found the Plaintiff pled a substantial disruption, but a substantial disruption was not pled in the Complaint.[2]

The Supreme Court in *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180 (2021) outlined "three specific categories of student speech that schools may regulate in certain circumstances: (1) 'indecent,' 'lewd,' or 'vulgar' speech uttered during a school assembly on school grounds"; "(2) speech, uttered during a class trip, that promotes 'illegal drug use'"; and "(3) speech that others may reasonably perceive as 'bear[ing] the imprimatur of the school,' such as that appearing in a school-sponsored newspaper." *Mahanoy*, 594 U.S. at 187–88. The Supreme Court, however, acknowledged that in some circumstances, off-campus speech still falls under the school's interest. These situations include: "serious or severe bullying or harassment targeting particular individuals; threats aimed at teachers or other students; the failure to follow rules concerning lessons, the writing of papers, the use of computers, or participation in other online school activities; and breaches of school security devices, including material maintained within school computers." *Id.* at 188. Importantly, the Supreme Court did not "set forth a broad, highly general First Amendment rule stating just what counts as 'off campus' speech and whether or how ordinary First Amendment standards must give way off campus to a school's special need to prevent, *e.g.*, substantial disruption of learning-related activities or the protection of those who make up a school community." *Id.* at 189.

But the Supreme Court did provide some guidance. "First, a school, in relation to off-campus speech, will rarely stand *in loco parentis*. . . . Geographically speaking, off-campus speech will normally fall within the zone of parental, rather than school-related, responsibility." *Id.* Second, "courts must be more skeptical of a school's efforts to regulate off-campus speech," and "the school will have a heavy burden to justify intervention" in off-campus religious or political speech. *Id.* at 189–190. "Third, the school itself has an interest in protecting a student's unpopular expression, especially when the expression takes place off campus." *Id.* It then stated: "these three features of much off-campus speech mean that the leeway the First Amendment grants to schools in light of their special characteristics is diminished. We leave for future cases to decide where, when, and how these features mean the speaker's off-campus location will make the critical difference." *Id.* All this to say, *Mahanoy* describes an extremely fact-intensive test.

In the Court's order on Defendants' motion to dismiss, the Court focused on the final instance where a school can regulate speech, that is, "speech that 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'" *Id.* But, because this is a fact-intensive inquiry, dismissal at the motion to dismiss stage was improper. *See CI.G v. Siegfried*, 38 F. 4th 1270 (10th Cir. 2022) (reversing dismissal because no allegations of substantial or actual disruption). At the motion to dismiss stage, Plaintiff is entitled to all reasonable inferences. Whether there is evidence of a serious disruption was not before the Court. That is why the majority of these cases are resolved at summary judgment, or a preliminary injunction, not a motion to dismiss. *See Mahanoy*, 594 U.S. 180 (summary judgment); *N.J. v. Sonnabend*, 37 F. 4th 412 (7th Cir. 2022) (summary judgment); *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668, 673 (7th Cir. 2008) (preliminary injunction). Here, the complaint alleges no reasonable forecast of substantial disruption or actual disruption.

---

[2]Although the Court took judicial notice of current events, these were noticed to provide context for the statement, and do not carry the day in terms of establishing a substantial disruption.

Indeed, Plaintiff alleged she sent a private, off-campus message, which she explicitly instructed the recipient not to share with anyone. *See Chen Through Chen v. Albany Unified Sch. Dist.*, 56 F.4th 708, 720 (9th Cir. 2022) (while acknowledging "subjective intention to keep the account private is not controlling," the court considered "whether it was reasonably foreseeable that the speech would reach and impact the school"). Determining whether this falls into the bucket of off-campus speech which schools can regulate will require a fully developed factual record. *Mahanoy*, 594 U.S. at 190 ("We leave for future cases to decide where, when, and how these features mean the speaker's off-campus location will make the critical difference."). The Court also cannot find at this stage that one message, sent privately to a different individual, constitutes the "serious or severe bullying or harassment targeting particular individuals" that *Mahanoy* held could be regulated.

Finally, Plaintiff argues that because Item 2 of Count III was dismissed only because Count I was dismissed, Court should reconsider its ruling on Item 2 of Count III as well. Because the Court reinstates Count I, the Court also reinstates Item 2 of Count III.

## CONCLUSION

For the reasons stated, the Court finds that reconsideration is appropriate under Rule 59(e). Accordingly, the Court grants Plaintiff's motion. R. 103. Count I and Item 2 of Count III of Plaintiff's FAC are reinstated.

Dated: March 16, 2026

United States District Judge
Franklin U. Valderrama

4